IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JACKSON S. BRUMLEY, ALBERT E. BRUMLEY, JR., ROLENE BRUMLEY, BETTY BRUMLEY POCKRUS, W. J. BRUMLEY, KRISTI BRUMLEY LAXTON, MARK BRUMLEY, AND KERI BRUMLEY PILCHER, | ) ) ) ) ) ) ) ) | Case No.: 3:08-CV-1193 Judge Trauger |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ALBERT E. BRUMLEY & SONS, INC., INTEGRATED COPYRIGHT GROUP, INC., AND ROBERT B. BRUMLEY, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is the plaintiffs' Motion for Summary Judgment (Docket No. 33). For the reasons discussed herein, the motion will be denied.

## FACTUAL AND PROCEDURAL HISTORY

This case arises out of the plaintiffs' attempt to terminate and re-capture the copyright to Albert E. Brumley, Sr.'s ("Brumley's") composition, "I'll Fly Away."[1] The plaintiffs, who are

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material facts (Docket Nos. 38 and 45) and related affidavits and exhibits. Although the facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McClean v. 988011 Ontario, Ltd.*, 224 F.3d 797,

1

some of Brumley's surviving heirs, claim that Brumley previously assigned the copyright to another entity (now controlled by one of the defendants) and that they have a statutory right to terminate that previous assignment and re-capture the copyright.

## FACTUAL BACKGROUND

In 1905, Brumley was born to tenant farmers in eastern Oklahoma, and he spent many of his early years picking cotton on his parents' farm. In 1926, Brumley traveled to Hartford, Arkansas, where he enrolled at the Hartford Musical Institute (HMI), under the tutelage of Eugene M. Bartlett, the owner of the HMI and the Hartford Music Company (HMC). Brumley attended the HMI roughly from 1926 to 1930, and he apparently displayed great talent.

In late 1928 or early 1929, Brumley began composing "I'll Fly Away," the composition that is at issue in this case. While Brumley was a student at HMI at this time, he actually began composing "I'll Fly Away" while picking cotton on his parents' farm. (Docket No. 34 at 4; Docket No. 37 at 4-5.) The plaintiffs claim that Brumley worked on the song for a few years and then, in 1932, while working at his father's general store in Powell, Missouri, submitted the song to HMI for review and potential sale. (*Id.*) The plaintiffs claim that HMC purchased the song (and two others) from Brumley for $3; the defendants claim that, at the time of submission, Brumley was a salaried staff writer for HMC. (*Id.*)

Either way, on September 15, 1932, the HMC published "I'll Fly Away" in a compilation titled "The Wonderful Message," and the song has since gone on to enjoy significant commercial success. Upon publication, HMC secured the initial copyright for the composition, but, as discussed below, the copyright was not recorded until 1959.

---

800 (6th Cir. 2000).

2

On January 1, 1936, Brumley entered into a written song-writing and publishing agreement with the HMC; this is the earliest such written agreement that is known to the parties. That agreement required Brumley to compose and deliver fifteen songs to HMC over the course of 1936 in exchange for $240. The contract also provided that:

> [HMC] agrees to copyright, when published, said songs in the name of [the HMC] to have and hold as its own for a period not exceeding five years from date of copyright, or, untill [sic] such time as [Brumley] shall sever business relations with the [HMC], at which time [HMC] agrees to relinquish all claims of ownership to said songs, including all songs of [Brumley] which have previously been published and copyrighted by [HMC] and to have them assigned to [Brumley].

(Docket No. 1 Ex. A.) The plaintiffs claim that this agreement operated as an assignment of Brumley's songs, including "I'll Fly Away," to HMC. (Docket No. 34 at 5.)

Sometime prior to September 8, 1947, Brumley formed Albert E. Brumley & Sons ("AEB") as a sole proprietorship for the purposes of holding title to and exploiting Brumley's songs, including "I'll Fly Away." Sometime in late 1947 or 1948, AEB and Brumley purchased HMC's assets, including the copyrights owned by HMC. Therefore, for several decades, AEB has controlled the copyright to "I'll Fly Away." (Docket No. 34 at 6.)

As noted above, on March 2, 1959, Brumley, in the name of HMC, filed the initial copyright registration for "The Wonderful Message." The filing indicated that "The Wonderful Message" was a compilation, and it identified Brumley (along with two other individuals) as an author of the words and music of the compilation. (Docket No. 1 Ex. B.) On October 9, 1959, Brumley, again in the HMC's name, filed a renewal registration for "The Wonderful Message." (Docket No. 1 Ex. C.) On April 22, 1960, Brumley filed a renewal registration for "I'll Fly Away," listing himself as the sole author of the words and music. (Docket No. 1 Ex. D.).

3

In 1975 or 1976, shortly before his death, Brumley sold AEB to his two sons, Bill and Robert Brumley, and, in 1986, Robert bought out Bill's share of the business. (Docket No. 31 Ex. 4 at 16.) The defendants maintain that, after 1986, Robert Brumley, with no help from his siblings, turned AEB from a failing business into a successful one. (Docket No. 37 at 7.) Since 1986, Robert Brumley, in his capacity as owner of AEB, has "wholly owned" the copyright to "I'll Fly Away," which continues to generate significant revenue for AEB. (Docket No. 34 at 1-2.)

As briefed here, this dispute centers around whether "I'll Fly Away" was created as a "work-for-hire," which, as discussed in the analysis section, has considerable bearing on the prospects for each side, with the plaintiffs arguing that it was not a work-for-hire and the defendants arguing that it was. Given that about 80 years have passed since the song was written and submitted to HMC, seemingly everyone with first-hand knowledge on the issue has died. Therefore, the parties rely on subsequent writings and discussions of "I'll Fly Away" in support of their arguments.

For instance, the plaintiffs point to the transcript of a 1977 interview of Brumley conducted by his son Albert, who is one of the plaintiffs. (Docket No. 31 Ex. 2.) According to the transcript, Brumley states that he began writing "I'll Fly Away" in late 1928 while picking cotton on his father's farm, that he wrote the song over a lengthy period of time, and that he finally sold the song to HMC, along with two others, in 1932 for $3. (*Id.* at 3, 10-13.) The plaintiffs also submit a 1991 article from *Precious Memories* magazine, which claims that Brumley was a "freelance" writer when he sold the song to HMC. (Docket No. 31 Ex. 6 at 73.)

4

Also in the record (and supporting the defendants' view) is a July 1986 article on Brumley from *Bluegrass Unlimited* magazine. (Docket No. 31 Ex. 6 at 76.) This article, which claims to be based on conversations with Brumley, his son Bill, and Bartlett's son, states that Brumley was "employed by Hartford as a $12.50 a month staff writer" at the time that "I'll Fly Away" was submitted. (*Id*. at 78.) The defendants point to an April 1977 article in the *Music City News* that reached the same conclusion. (Docket No. 37 at 5-6.)

Similarly, the defendants have filed excerpts from a 1990 book, *I'll Fly Away: The Life of Albert E. Brumley*, by Brumley's son Albert and a woman named Kay Hively. (Docket No. 36 Ex. 11.) The book states that, "as a staff songwriter" for HMC, Brumley "made $12.50 a month."[2] (Docket No. 36 Ex. 11 at 7.) The book goes on to claim that, while Brumley first conceived of the lyrics for "I'll Fly Away" in 1928, while picking cotton alone in a field on his father's farm in Oklahoma, Brumley did not finish the song until years later, while he was a salaried staff writer at HMI and, therefore, the song was "the property of HMC." (*Id*. at 4-7.)

The defendants also point to a deposition that Albert gave in another proceeding (involving alleged infringement of a Brumley song) in 2002 in the U.S. District Court for the Western District of Missouri. (Docket No. 36 Ex. 5.) There, Albert testified that Brumley was an HMI employee when "I'll Fly Away" was written. (*Id.* at 41.) Albert also testified that he reviewed his book with a "fine tooth comb" for accuracy, although he cautioned that the book was not intended to be a "reference book for the copyright history of any particular song." (Docket No. 36 Ex. 5 at 28, 68.)

---

[2] In his deposition in this matter, Albert stated that he does not "know where [these statements] [] came from," and that he should have "paid more attention when [writing] the book." (Docket No. 36 Ex. 4 at 61.)

Brumley has four surviving children. Jackson, Albert, and Betty are plaintiffs in this action, and Robert is a defendant. Four of Brumley's grand-children (W.J, Kristi, Mark, and Keri) are also plaintiffs. They are the sole surviving children of Brumley's sixth child, who died in 1995. The remaining plaintiff, Rolene, is the surviving spouse of Brumley's fifth child, who died in 2009.

In April 2006, pursuant to Section 304 of the Copyright Act, several plaintiffs (acting as Brumley's hiers) delivered a "Notice of Termination" of AEB's rights in "I'll Fly Away." (Docket No. 1 Ex. E.) The Notice has an "effective date" of April 14, 2008. (*Id*.) AEB refused to honor the "Notice to Termination," arguing that "I'll Fly Away" was a work-for-hire that is, therefore, owned by AEB, not Brumley's heirs. (Docket No. 1 Ex. F.) On December 16, 2008, the plaintiffs filed this lawsuit against AEB, its owner Robert Brumley, and Integrated Copyright Group, which "provides copyright administration, licensing, and collection services" for, among others, AEB. (Docket No. 1 at 2-4.) On November 30, 2009, the plaintiffs voluntarily dismissed a few of their claims, leaving only their claims for declaratory relief and a "post-termination accounting." (Docket No. 1 and Docket No. 29.)

## **ANALYSIS**

Through their Motion for Summary Judgment, pursuant to 17 U.S.C. § 101 *et seq.*, 17 U.S.C. § 304 and 28 U.S.C. § 2201, the plaintiffs seek a declaratory judgment that "I'll Fly Away" was not a "work-for-hire, and, as such, the Termination Notice was effective as of April 14, 2008." (Docket No. 1 at 10.) The plaintiffs also seek a "post-termination accounting" that would allow the plaintiffs to determine the "revenues and profits" acquired by the defendants, beginning with the date on which the Termination Notice would have been effective. (*Id.* at 12-

13.)  The defendants maintain that disputed issues of fact surrounding the work-for-hire issue preclude summary judgment for the plaintiffs.

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In evaluating the evidence, "the court must draw all inferences in the light most favorable to the nonmoving party."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252.  An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.  Work-For-Hire

The parties agree that the substantive provisions of the Copyright Act of 1909 (the "1909 Act") govern whether "I'll Fly Away" was a work-for-hire, as the composition was created prior to January 1, 1978.  (Docket No. 34 at 11; Docket No. 37 at 9); *see also King Records, Inc. v. Daily*, 2003 U.S. Dist. LEXIS 27285, at *17-18 (M.D. Tenn. Sept. 22, 2003) (stating that the

7

status of works created before January 1, 1978, the effective date of the Copyright Act of 1976, are governed by the 1909 Act).

Additionally, the Copyright Act of 1976 (the "1976 Act") allows an author of a work to terminate a previous grant of rights in a copyright that existed as of January 1, 1978. 17 U.S.C. § 304(c). When the author and the author's spouse are both deceased, as is the situation in this case, the "author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest." 17 U.S.C. § 304(c)(2)(B).

In light of this statutory framework, the defendants concede that, if Brumley is the statutory "author" of the composition "I'll Fly Away," then the plaintiffs, as Brumley's heirs, are "entitled to terminate the copyright." (Docket No. 37 at 9.) However, as discussed above, the defendants maintain that Brumley is not the statutory author because the composition was a work-for-hire, and, therefore, Brumley's heirs do not have a termination right. (*Id.*); *see also* 17 U.S.C. § 304(c) ("In the case of any copyright subsisting in either its first or renewal term on January 1, 1978, *other than a copyright in a work made for hire*, the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it . . . is subject to termination")(emphasis added).

The Copyright Act of 1909 made an employer the "author" and initial copyright holder of "works made for hire." *Easter Seal Society for Crippled Children & Adults v. Playboy Enters.*, 815 F.2d 323, 325 (5th Cir. 1987). The crucial issue in determining whether a creation was a "work-for-hire" is the "instance and expense" test, that is, whether the work was created at the "instance and expense" of the employer; if so, then the creation is a "work-for-hire," with the copyright owned by the employer. *See id.* at 327. Additionally, as the case law developed under

8

the 1909 Act, there became "almost an irrebutable presumption that any person who paid another to create a copyrightable work was the statutory author [and owned the copyright] under the 'work for hire' doctrine." *Id.*  Again, the sole issue on this motion is whether there is a "genuine issue of material fact" regarding whether the composition "I'll Fly Away" is a work-for-hire. *See* Fed. R. Civ. P. 56(c).

The plaintiffs and the defendants have both proffered evidence in support of their respective positions on the "work-for-hire" issue.   As can be seen from the discussion herein, there is a clear issue of fact on the authorship issue, and, therefore, the plaintiffs are not entitled to summary judgment on the "work-for-hire" issue.

The plaintiffs' best evidence in support of their assertion that Brumley is the statutory author of "I'll Fly Away" is the 1960 copyright registration of "I'll Fly Away," which lists Brumley as the sole author of the words and music to the song. (Docket No.1 Ex. D.)  The registration makes no mention of HMC and does not list HMC as the author, as would be expected under the 1909 Act, if the composition had been created as a work-for-hire.  (*See id.*); 17 U.S.C. § 26 (1909 Act)(also Section 62 of the 1909 Act).

A copyright registration certificate establishes a "*prima facie* presumption as to all of the facts stated therein," including authorship. *Blumcraft of Pittsburgh v. Newman Brothers, Inc.*, 373 F.2d 905, 906 (6th Cir. 1967); *Banctraining Video Sys. v. First American Corp.*, 956 F.2d 268, 1992 WL 42345, at *3 (6th Cir. Mar. 3, 1992) (unpublished opinion); 17 U.S.C. § 209 (1909 Act) (stating that the certificate of registration "shall be admitted in any court as *prima facie* evidence of the facts stated therein")(also Section 55 of the 1909 Act).  As such, the

9

registration certificate establishes a presumption that Brumley is the statutory author of "I'll Fly Away." *See id.*

However, this presumption may be rebutted by "other evidence in the record [that] casts doubt" on the validity of the copyright registration. *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir. 1991); *see also Banctraining Video Sys.*, 956 F.2d 268, 1992 WL 42345, at *3. The defendants' best evidence that Brumley was not the statutory author, but, instead, wrote "I'll Fly Away" as a work-for-hire, is Albert's deposition testimony in the 2002 Missouri case, in which Albert testified that Brumley was an HMC employee when he wrote "I'll Fly Away."[3] (Docket No. 36 Ex. 5 at 41.) In that deposition, Albert testified as follows:

> Q: Was [Brumley] an employee of [HMC] at the time he wrote "I'll Fly Away"?
> A: Yes, he was.

---

[3]Albert's 2002 deposition testimony is not hearsay because it is an admission by a party-opponent. Fed. R. Evid. 801(d)(2)(A). The basis for Albert's deposition testimony that his father was an HMC employee is not clear, although it is presumably based upon the research that he conducted about his father's career and the knowledge that he gained growing up around his father. Admissions by a party-opponent "need not necessarily be based on personal knowledge to be admissible," and, "no guarantee of trustworthiness is required in the case of an admission." *Nowell v. City of Cincinnati*, 2006 WL 2619846, at *6 (S.D. Ohio Sept. 12, 2006) (citing *MCI Communications Corp. v. American Tel. And Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir. 1983)); Fed. R. Evid. 801 advisory committee note ("The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness . . . calls for generous treatment of this avenue to admissibility"). Other courts have concluded that, when an admission by a party-opponent contains a clear "reiteration of what someone" told the party-opponent, then hearsay issues must be addressed. *See Carden v. Westinghouse Electronic Corp.*, 850 F.2d 966, 1003 (3d Cir. 1988) (quoting *Cedeck v. Hamiltonian Federal Savings and Loan Association*, 551 F.2d 1136 (8th Cir. 1977)). The court need not look into any such issues at this time, as Albert's testimony does not clearly "reiterate" what someone told him, as it simply asserts a fact. Indeed, even if the admission is based upon hearsay, the underlying information may still be admissible under a hearsay exception. *See* Fed. R. Evid. 803. It is simply unclear, at this point, what facts support Albert's statement that his father was an employee.

10

(*Id.*)  In the same deposition, Albert stated that he reviewed his book, *I'll Fly Away: The Life of Albert E. Brumley* with a "fine tooth comb" and testified that the facts as stated in the book are "accurate."  (*Id.* at 28.)  As discussed above, the 1990 book stated that Brumley was "a staff songwriter" for HMC while he was writing "I'll Fly Away."  (Docket No. 36 Ex. 11 at 4-7.)

As Brumley's son and as an individual who had researched his father's past, Albert was privy to intimate and detailed knowledge regarding his father's song-writing career.  Indeed, as indicated above, the record contains both a 1977 interview that Albert conducted with his father about his song-writing career and the book that Albert helped write on the same topic.  Albert's 2002 testimony, therefore, casts significant doubt on whether Brumley was the statutory author of "I'll Fly Away" and supports the defense argument that Brumley created "I'll Fly Away" as a work-for-hire.

Much, if not all, of the parties' remaining evidence appears to be hearsay, which is inadmissible at the summary judgement stage and would be inadmissible at trial.  *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir. 2003)(citing *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999)).  Specifically, there appear to be significant hearsay problems with the transcript of the 1977 interview of Brumley, the book excerpts from *I'll Fly Away: The Life of Albert E. Brumley*, and the various magazine articles in the record.  *See Essex Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 2007 WL 1726593, at *3 (E.D. Mich. May 30, 2007) (holding that an interview transcript was inadmissible hearsay for which no hearsay exceptions applied); *United States v. Resnick*, 594 F.3d 562, 570 n.4 (7th Cir. 2010) (holding that book excerpts were "certainly hearsay"); *Almond v. ABB Industrial Sys.,*

11

*Inc.*, 2001 WL 242548, at *8 (S.D. Ohio March 6, 2001) (holding that copies of magazine articles are "clearly inadmissible hearsay," sometimes containing "double hearsay" problems).

So far as the court can tell, the parties have raised no hearsay objections and do not even mention the word "hearsay" in their briefing.[4] The court is not making a final determination regarding whether these sources are definitively hearsay. Rather, the court is hesitant to entertain the evidence because it has such a strong semblance to hearsay and lacks other indicia of reliability. This is particularly so as summary judgment is being denied on the basis of non-hearsay evidence that raises a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c).

## CONCLUSION

For all of the reasons discussed above, the plaintiffs' Motion for Summary Judgment will be denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[4] The plaintiffs argue that a ruling on the merits of the case is appropriate because all relevant discovery between the parties has taken place, and no further documents will be discovered. (Docket No. 34 at 3 n.7.) Thus, the plaintiffs argue that "forcing the parties to proceed to trial" is not in the "interest of judicial economy." (*Id.*) However, the relevant inquiry in ruling on a summary judgment motion is *not* whether the parties will discover additional testimony, documents, or witnesses before trial, but whether the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Moldowan*, 578 F.3d at 374. As discussed, there is a "genuine issue of material fact" as to whether "I'll Fly Away" was created as a "work-for-hire," and, therefore, the plaintiffs are not entitled to summary judgment.