# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| JACKSON S. BRUMLEY, ALBERT E. | ) | |
| BRUMLEY, JR., ROLENE BRUMLEY, | ) | |
| BETTY BRUMLEY POCKRUS, | ) | |
| W. J. BRUMLEY, KRISTI BRUMLEY | ) | Case No.: 3:08-CV-1193 |
| LAXTON, MARK BRUMLEY, AND | ) | Judge Trauger |
| KERI BRUMLEY PILCHER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERT E. BRUMLEY & SONS, INC., | ) | |
| INTEGRATED COPYRIGHT GROUP, INC., | ) | |
| AND ROBERT B. BRUMLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Among several motions *in limine*, pending before the court is Plaintiffs' Motion in
Limine No. 1 (Docket No. 61), which seeks an Order from the court "prohibiting the Defendants
from presenting any evidence concerning or related to any newspaper/magazine articles written
about Albert E. Brumley, Sr. and previously disclosed by Defendants via discovery." (*Id.*) The
plaintiffs also seek an Order barring the admission of "any excerpts from the book '*I'll Fly
Away: The Life of Albert E. Brumley.*'" (Docket No. 62 at 1.) As discussed herein, this motion
will be granted in part and denied in part.

1

As discussed in detail in the court's April 9, 2010 Memorandum that ruled on the plaintiffs' Motion for Summary Judgment (Docket No. 46), the primary issue in this copyright case is whether Albert E. Brumley, Sr. ("Brumley") created his famous, depression-era composition "I'll Fly Away" as an independent songwriter or as a "work for hire" at the direction of the Hartford Music Company (HMC). Given that the song was written about 80 years ago, clear proof on Brumley's employment status at the time that the song was written has been somewhat hard to come by. The magazine articles and the book, noted above, are evidence that the defendants intend to use to show that "I'll Fly Away" was a work-for-hire.

### A.     Magazine Articles

Four articles are at issue. One, an article titled "Brumley is Ozark's Country/Gospel Songmaster," written by Paul Stubblefield in April 1977, appeared in the periodical *The Music City News*. (Docket No. 62 Ex. 1.) In the course of a longer account of Brumley's life, Stubblefield states that "Brumley wrote [I'll Fly Away] in 1931 when he was receiving $12.50 a month turning out music for [HMC]." (*Id.*) Two, a lengthy piece by Bill Malone on Brumley's life, titled "Albert E. Brumley – Folk Composer," appeared in *Bluegrass Unlimited* magazine in July 1986. At one point, Malone states that Brumley "wrote the song [when] he was working in his father-in-law's general store for a dollar a day, and was also employed by [HMC] as a $12.50 a month staff writer." (*Id.* at 4.)

Three, in the May/June 1991 issue of *Precious Memories* magazine, Charles Wolfe, in an article titled "I'd Rather be an Old-Time Christian – The Music of Albert E. Brumley," stated that, in the early 1930s, Brumley married and began working "in the store of his new father-in-law, and mailed in songs to [HMC], earning on the average $3.00 for each published song." (*Id.*

2

at 12.)  The final article, written by Kathy E. Ledbetter for *Pickin'* magazine, is titled "Albert E. Brumley: Gospel and Folksong Writer."  This article is undated and does not appear to contain information on the circumstances surrounding the authorship of "I'll Fly Away."  (*Id.* at 15-16.)

Therefore, to varying degrees, the four magazine articles, all written decades after "I'll Fly Away" was authored, arguably support the defendants' view that "I'll Fly Away" was a work-for-hire.  The plaintiffs, through this motion, move to exclude those articles as inadmissible hearsay and as inadmissible under Federal Rule of Evidence 403.  (Docket No. 62 at 6-8.)

While the plaintiffs concede that the articles are self-authenticating "newspapers and periodicals" pursuant to Federal Rule of Evidence 902(6), they argue that each article contains "multiple hearsay issues" and that "it is unclear exactly where each of the authors of the four articles in question obtained the information contained within the articles."  (Docket No. 62 at 5.) They note that the three articles that actually discuss the circumstances under which "I'll Fly Away" was written are inconsistent on certain details, such as where Brumley wrote the song and how much he was paid.  (Docket No. 62 at 5-6.)  In sum, the plaintiffs maintain that the articles are unreliable, and "each of these accounts contain layer upon layer of hearsay as the statements are either reflections of the authors or summaries of statements made to the authors by unknown third parties."  (*Id.* at 6-8.)

In response, the defendants do not challenge that the relevant statements are hearsay but argue that they fall within the "ancient documents" exception to the hearsay rule.  (Docket No. 73 at 2.)  Under the "ancient documents exception," not excluded by the hearsay rule are "[s]tatements in a document in existence twenty years or more the authenticity of which is

3

established." Fed R. Evid. 803(16).  The defendants cite several cases, from outside this Circuit, in which courts have admitted periodicals under the ancient document exception.  *See e.g. EnergyNorth Natural Gas, Inc. v. UGI Utilities, Inc.*, 2003 WL 1797946, *1 (D.N.H. April 3, 2003); *Gonzales v. N. Twp. of Lake County*, 800 F. Supp. 676, 681 (N.D. Ind. 1992); *see also Hicks v. Pfizer & Co.*, 466 F. Supp.2d 799, 805 (E.D. Tex. 2005)(for the general rationale behind the rule).

To the extent that the ancient document exception applies, it only applies to two of the articles here.  The Wolfe article was written in 1991, that is, less than 20 years ago, and the Ledbetter article is undated, thus making the ancient document exception inapplicable.  In light of this, those two documents will be excluded on hearsay grounds.  The remaining question is whether the statements in the Stubblefield and Malone articles, recognized to be hearsay, should be deemed admissible.

Under the plain language of 803(16), the statements fall within the "ancient documents" exception.  That is, "Federal Rule of Evidence 803(16) provides an exception to the rule against hearsay for statements in a document in existence twenty years or more, if the document is authenticated."  *U.S. v. Kalymon*, 541 F.3d 624, 633 (6th Cir. 2008)(internal quotation omitted). Moreover, "the content of the document is a matter of evidentiary weight left to the sole discretion of the trier of fact," and, therefore, the factual accuracy of the statement is not pertinent when considering whether the hearsay exception applies.  *Id; see also U.S. v. Mandycz*, 447 F.3d 951, 966 (6th Cir. 2006).  Also, here, because the challenged statements are simply the assertions of the articles' authors and do not quote or attribute statements to anyone

4

else, the assertions do not contain a potential "hearsay within hearsay" problem.  *See* Fed R.

Evid. 805; *Ruth v. A.O. Smith Corp.*, 615 F. Supp. 2d 648, 651 (N.D. Ohio 2005).

All that said, courts must still use the discretion and guidance afforded by the rules of

evidence, including Rule 403[1], to determine whether it is appropriate to admit an ancient

document into evidence.  In making this determination, the principles underlying the ancient

document rule, applied to the facts of the case, provide helpful guidance.  As described in one

treatise, "[n]eed is the main justification for an ancient documents exception. The passage of 20

years since the acts, events, or conditions described almost guarantees a shortage of evidence. . .

. Witnesses will have died or disappeared. Written statements that might fit other exceptions

(business records, past recollection) are typically thrown out or lost or destroyed.  The need

factor justifies an exception for ancient documents despite lack of positive guarantees of

trustworthiness."  Mueller & Kirkpatrick, *Federal Evidence* § 8.100 (2010).

However, it has also been recognized that need of evidence does not overwhelm the

continuing requirement that statements of witnesses (including hearsay declarants) be based

upon personal knowledge.  As one noted treatise states, "to be admissible . . . an ancient

document must generally be based on the personal knowledge of its author.  However, it would

usually be impossible to prove personal knowledge after the lapse of 20 years or more.

Nevertheless, a showing from the circumstances that the declarant could have had the requisite

knowledge may be required."  Weinstein & Berger, *Weinstein's Federal Evidence* § 803.18

---

[1] Federal Rule of Evidence 403 provides that, despite the fact that evidence is relevant and otherwise admissible, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

(2002)(citing Advisory Committee notes); *see also EnergyNorth Natural Gas, Inc.*, 2003 WL 1797946, *1 (D.N.H. April 3, 2003)(noting personal knowledge requirement); *Columbia First Bank v. US*, 58 Fed. Cl. 333, 338 (Fed. Cl. 2003)(in the ancient document context, "a court may require a showing that the declarant could have had firsthand knowledge.")

As indicated above, the defendants rely heavily on the *Hicks* case, which provided several additional rationales for admitting ancient documents, including that age provides assurance that the document predates the present controversy and that a written document of advanced age is more reliable than a memory based upon events from the same time. (Docket No. 73 at 2.) However, *Hicks* also recognized that admissibility decisions must be informed by considerations of the declarant's personal knowledge, and it cautioned against admission where the "danger of faulty perception persists unabated because a narrator, such as a reporter, may not properly record the remarks of the speaker." 466 F. Supp.2d at 806. In a recent case, another district court held that, while a series of newspaper articles fit the technical definition of "ancient documents," they were still inadmissible as they were "littered with admissibility issues" and other indicia of unreliability, including that the reports omitted key information and were sensationalistic. *Emhart Industries, Inc. v. Home Ins. Co.*, 515 F. Supp.2d 228, 268 (D.R.I. 2007). Clearly, a well-reasoned approach cannot simply deem troubling documents admissible because they happen to be "ancient."

In light of all this, the court will also exclude the relevant statements in the Stubblefield and Malone articles. There is no clear indication in these articles as to how the authors acquired the information that they used to make the representations regarding Brumley's employment status at the relevant time. Presumably, however, the authors, in their research for the articles,

6

spoke to various individuals on the matter, who, by that point, were relying on memories that were several decades old.  Therefore, the "danger of faulty perception," in terms of the information relayed to, and recorded by, the author, is very high.   Moreover, the "need" of the information does not justify overlooking these concerns.  There is considerable other evidence (including the book, the 1977 Brumley interview, the copyright registrations, and witness testimony) that bears on the authorship issue.  These articles, therefore, do not fill an urgent need in this case.  Rather, the articles simply provide, as the plaintiffs put it, "a blank face," a statement of fact with no understandable supporting basis.  (Docket No. 62 at 7.)  Even if the articles technically qualify as ancient documents and are not to be excluded on that basis, the "litter[] of admissibility issues," including those implicated by Rule 403 and Rule 602 (personal knowledge) dictate that these articles should be excluded.

  **B.**  **The Book**

  The admissibility of the relevant passages in the book does not provide as complicated an evidentiary question. As discussed in the summary judgment Memorandum, plaintiff Albert E. Brumley, Jr., co-authored a book, *I'll Fly Away: The Life of Albert E. Brumley*, which contains passages that are helpful to the defendants' work-for-hire argument.  Indeed, the book states that, "as a staff songwriter" for HMC, Brumley "made $12.50 a month."  (Docket No. 36 Ex. 11 at 7.)  The book goes on to claim that, while Brumley first conceived of the lyrics for "I'll Fly Away" in 1928, while picking cotton alone in a field on his father's farm in Oklahoma, Brumley did not finish the song until years later, while he was a salaried staff writer at HMC and, therefore, the song was "the property of HMC."  (*Id*. at 4-7.)

The plaintiffs launch a weak argument for the inadmissibility of the book. They point out that, (1) in previous testimony, plaintiff Brumley has claimed that he did the "leg work" for the book but did not actually write it, (2) it is not possible to tell which statements in the book are those of plaintiff Brumley and which ones are that of his co-author Kay Hively, and (3) the book is not "about work-for-hire or copyright issues." (Docket No. 62 at 7-8.)

In response, the defendants argue that the statements in the book are not hearsay because they are the admissions of a party-opponent. (Docket No. 73 at 4 citing Fed. R. Evid. 801(d)(2)). Also, even if the statements were somehow exclusively attributable to Hively, plaintiff Brumley has previously given deposition testimony in which he stated that the book was "accurate" and that Brumley was an employee of HMC at the time that I'll Fly Away was written, and, therefore, plaintiff Brumley has "manifested an adoption or belief in [the] truth" of the statements in the book and, therefore, the statements are still admissions by a party-opponent. (Docket No. 73 at 6 citing Fed. R. Evid. 801(d)(2)(B)).

The book statements are clearly not hearsay and admissible. Plaintiff Brumley is listed as a co-author of the book, and there is every indication that plaintiff Brumley worked with Hively to develop the book's content. The statements are admissions by a party-opponent and, therefore, are not hearsay under Fed. R. Evid. 801. The plaintiffs have not come forward with any evidence to indicate that another rule of evidence would operate to exclude the book.

Therefore, the Plaintiffs' Motion in Limine No. 1 (Docket No. 61) is **GRANTED IN PART and DENIED IN PART.** The relevant passages from the newspaper and magazine articles discussed herein are not admissible, but the relevant passages from the book are.

It is so Ordered.

8

Entered this __9th__ day of July 2010.

ALETA A. TRAUGER
United States District Judge

9